## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 08 2015, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

David A. Wilson
Walter J. Alvarez, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Richard R. Skiles
Skiles DeTrude
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cindy Brothers, As Personal Representative of the Estate of Kristopher Stately, Deceased, Alicia Arnold and Tiffany Arnold,

*Appellants-Plaintiffs,*

v.

Lake Holiday Enterprises, Inc.,

*Appellee-Defendant.*

July 8, 2015

Court of Appeals Case No. 37A03-1410-CT-347

Appeal from the Jasper Circuit Court.
The Honorable John D. Potter, Judge.
Cause Nos. 37C01-1109-CT-757, 37C01-1308-CT-583

## Barteau, Senior Judge

[1] Lake Holiday has filed a petition for rehearing from this Court's memorandum decision reversing the trial court's grant of summary judgment in its favor as to all claims filed against it. We grant Lake Holiday's petition for the sole purpose

of addressing the issue of summary judgment with respect to Alicia and Tiffany Arnold's bystander claims of negligent infliction of emotional distress. We decline to revisit our reversal of summary judgment as to the other claims in our opinion.

[2] Alicia and Tiffany filed bystander claims for negligent infliction of emotional distress resulting from their brother's drowning. The designated materials established that Alicia, who was visiting someone in Hammond, Indiana, received a call from her mother, Cindy Brothers. Brothers told Alicia that Kristopher had been swimming, went underwater, and had not resurfaced. The two talked for approximately two to three minutes. Alicia then drove to Brothers' house in Hammond. The trip took approximately five minutes. The two waited for Kristopher's father, Alvin Stately, to arrive at the house. Twenty minutes later after he arrived, Alvin, Alicia, and Brothers drove to Lake Holiday Campground in DeMotte, Indiana. It was raining heavily during the trip there, which took approximately thirty to forty minutes.

[3] Tiffany, her uncle, and her uncle's children were at a grocery store in Lafayette, Indiana when Tiffany's uncle received a phone call. After he passed the telephone to Tiffany, she went outside the store. Tiffany's grandmother told her that Kristopher had gone under the water at Lake Holiday and had not resurfaced. Tiffany, who was crying, sat on her uncle's car awaiting her uncle and his children's return from the store to the car. The trip to his house from the store took approximately ten to fifteen minutes. They waited approximately five to ten minutes for Tiffany's aunt to return home from work. After she

arrived, they drove to the campground, taking approximately thirty to forty minutes to get there.

[4] After Tiffany arrived at the lake and waited, she observed divers bringing Kristopher's body out of the water in a body bag. She observed Kristopher's feet and what she described as a bunch of kelp. After Alicia arrived at the lake she waited for approximately twenty minutes before Kristopher's body was pulled out of the water by divers. Alicia's boyfriend then turned her around, presumably to prevent her from seeing Kristopher's body. She did, however, observe responding personnel unsuccessfully attempting to revive her brother.

[5] The trial court granted summary judgment in favor of Lake Holiday as to those claims.

[6] In *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011), the Supreme Court emphasized that while Indiana does not recognize an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another, actions seeking damages for emotional distress resulting from the negligence are permitted where (1) the plaintiff has witnessed or come to the scene soon thereafter the death or severe injury of a certain class of relatives, or (2) the plaintiff has suffered a direct impact. Here, the bystander rule applies. Under the bystander rule, "the death/severe injury must have been proximately caused by the defendant's breach of some cognizable legal duty owed by the defendant *to the relative* at issue." *Id.* (citing *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000)) (emphasis in original).

[7] We determined that genuine issues of material fact pertaining to Kristopher's status on the Lake Holiday property precluded summary judgment on his estate's claims, therefore, it seemed to follow that summary judgment was premature with respect to his sisters' claims because the existence of a duty to Kristopher, if any, was not yet determined. However, we conclude that the proximity requirement for bystander recovery is dispositive of the sisters' claims and find that the entry of summary judgment in Lake Holiday's favor was appropriate and is affirmed.

[8] In *Groves*, the Supreme Court discussed the line of cases establishing in what situations a plaintiff could recover for emotional trauma. For example, in *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991), the Supreme Court concluded that "a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff." Later, in *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind. 1999), the Supreme Court applied the *Shuamber* rule, stating that in *Shuamber* the Court had "recognized the diminished significance of contemporaneous physical injuries in identifying legitimate claims of emotional trauma from the mere spurious." "Rather, 'direct impact' is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma." *Id.* The Court in *Groves* concluded that "[g]iven that the prevention of merely spurious claims is the rationale for the *Shuamber* rule, logic dictates that there may well be circumstances where, while the plaintiff does not sustain a direct impact, the plaintiff is sufficiently directly

involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious." *Groves*, 729 N.E.2d at 572.

In *Smith v. Toney*, 862 N.E.2d 656, 659 (Ind. 2007), the Court observed that the *Groves* decision, allowing bystander recovery of damages for negligent infliction of emotional distress, had followed the reasoning applied in *Bowen v. Lumbermens Mutual Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994) by the Wisconsin Supreme Court. Our Supreme Court reaffirmed its agreement with the approach taken in *Bowen* to the concerns present in bystander claims seeking recovery for negligent infliction of emotional distress, and set forth the three factors outlined in *Bowen* to be used in determining on the basis of public policy whether liability for bystander recovery for negligent infliction of emotional distress should be precluded. Those factors include 1) the severity of the victim's injury, 2) the relationship of the plaintiff to the victim, and 3) the circumstances surrounding the plaintiff's discovery of the victim's injury. 862 N.E.2d at 660. The Court further held that those were issues of law to be resolved by the trial court. *Id.*

Among other issues decided in *Smith*, the issue of "whether the proximity determination from *Groves*—whether a plaintiff 'came on the scene soon after the death of a loved one'—is a matter of time alone or also of circumstances" was resolved. *Id.* at 662. The Court held that the determination is "both temporal—at or immediately following the incident—and also circumstantial." *Id.* at 663. "The scene viewed by the claimant must be essentially as it was at

the time of the incident, the victim must be in essentially the same condition as immediately following the incident, and the claimant must not have been informed of the incident before coming upon the scene." *Id.*

[11] Here, the record reflects that both Alicia and Tiffany were notified separately by telephone that their brother had gone underwater and had not resurfaced. When Tiffany and Alicia arrived at the lake, Kristopher had been under water for what Kristopher's brother, Richard, estimated to be an hour or an hour and a half. One sister arrived approximately forty minutes after learning of the incident, and the other arrived approximately an hour after learning of the incident by telephone. The proximity requirement was a matter of law for the trial court to resolve and the requirement precludes Tiffany and Alicia's bystander recovery.

[12] We conclude that the trial court correctly granted summary judgment in favor of Lake Holiday on Alicia and Tiffany's claims, but find that our reversal of summary judgment on the remaining claims remains appropriate.

[13] Affirmed in part, reversed in part and remanded.

Najam, J., concurs. Robb, J., concurs in result.